**YOUA TRUE VANG, Relator,**

v.

**A–1 MAINTENANCE SERVICE, Department of Economic Security, Respondents.**

**No. C5–85–1230.**

Court of Appeals of Minnesota.

Nov. 12, 1985.

Thomas G. Squire, St. Paul, for Youa True Vang.

A–1 Maintenance Service, pro se.

Hubert H. Humphrey, III, Minn. Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Security.

Considered and decided by POPOVICH, C.J., and LESLIE, and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This is an appeal from a determination by the Commissioner of Economic Security relator voluntarily terminated his employment without good cause attributable to the employer. We affirm.

## FACTS

Relator Youa True Vang was employed by respondent A–1 Maintenance Service ("A–1") from January 1, 1983 until October 12, 1984. He worked in the Federal Reserve Bank building doing janitorial maintenance.

On September 30, 1984 Vang and a co-worker were involved in an incident in the lunchroom area of the building. Vang, who is of Hmong descent, was sitting at a table with two other persons and was laughing at the co-worker for taking a beverage without paying for it. The co-worker, who is Mexican, was cleaning tables in the lunchroom with a spray cleaner, and

responded to the laughter by spraying cleaner into Vang's face, causing his eyes to burn and itch for several days.

Vang immediately contacted his supervisor, who discussed the matter with both parties. The supervisor told them to try to avoid repetition of the incident, and informed Vang in the future the two would work on different floors. Vang thereafter observed the co-worker working on his floor, but did not inform his supervisor.

Shortly after the spraying incident, Vang contacted the counselor who had helped him find the job with A–1. He told the counselor of the problem with the co-worker, and asked the counselor to intervene on his behalf. The counselor contacted the owner of A–1, Richard Patton, who agreed to meet with the counselor. The parties dispute whose responsibility it was to set up the meeting. The meeting was never held.

Several days after the spraying incident, Vang noticed a bag of aluminum cans which he had been collecting was missing. Whether he complained to his supervisor about this is also disputed.

Vang terminated his employment with A–1 because he did not believe his employer was taking sufficient steps to resolve his problem with the co-worker.

Vang filed a claim for unemployment benefits, and a claims deputy determined he had voluntarily quit and was not entitled to benefits. Vang appealed, and a hearing was held before a referee on January 14, 1985. Vang appeared at the hearing with an attorney and an interpreter, and presented testimony. There was no appearance by A–1. Following the hearing, the referee determined Vang had discontinued his employment with good cause attributable to his employer.

A–1 appealed to the Commissioner. Patton, Vang and the supervisor appeared at the hearing, but Vang's attorney forgot to attend and there was no interpreter available. The Commissioner's representative noted both parties had experienced confusion throughout the proceedings, and noted several questions which had not been answered in the first hearing. The Commissioner remanded to a referee for further testimony.

Upon remand, Richard Patton testified Vang and the co-worker had been assigned to different floors, he knew nothing of the missing can incident, and it had been the counselor's responsibility to set up a time to meet with him. At the conclusion of the second hearing, the referee determined Vang had quit without good cause attributable to his employer. The referee characterized the spraying incident as a "rather insignificant personality conflict" which the supervisor did attempt to resolve.

Vang appealed and a Commissioner's representative affirmed, concluding it was Vang's responsibility to check with his supervisor when he felt the actions taken to remedy the problem were insufficient. Vang appealed the Commissioner's decision.

### ISSUES

1. Did the Commissioner's representative improperly remand this matter for the receipt of additional testimony?

2. Did the Commissioner's representative improperly base his findings upon hearsay testimony?

3. Was a specific finding regarding the credibility of the witnesses necessary?

4. Did the Commissioner's representative erroneously determine that Vang voluntarily terminated his employment without good cause attributable to his employer?

### ANALYSIS

1. "Within our narrow scope of review, we must review the findings in the light most favorable to the decision." *Krantz v. Larco Division*, 363 N.W.2d 833, 834 (Minn. Ct.App.1985).

■ 2. Minn.Stat. § 268.10, subd. 5 (1984), authorizes the Commissioner to remand for additional testimony. We do not find the Commissioner's action was " 'so

arbitrary and unreasonable that it represents its will and not its judgment.'" *King v. Little Italy,* 341 N.W.2d 896, 898 (Minn.Ct.App.1984). A–1 was not represented at the first hearing, and the Commissioner recognized there was a lack of relevant information in the record. The Commissioner's representative had to determine whether to proceed with the appeal in the absence of Vang's attorney and interpreter, reschedule the appeal hearing to accommodate Vang, or remand to accommodate A–1 and complete the record. We will not substitute our judgment for the decision of the Commissioner.

3. Vang also challenges the findings of the Commissioner's representative, alleging they are inappropriately based upon hearsay, and a specific finding should have been made regarding the credibility of the witnesses.

■ Economic security hearings may be conducted in conformance with the Commissioner's own rules, whether or not they are technically in compliance with the Minnesota Rules of Evidence or other rules of procedure. Minn.Stat. § 268.10, subd. 6 (1984). Hearsay may be admissible and sufficient to support the Commissioner's decision. *Pichler v. Alter Co.,* 307 Minn. 522, 523, 240 N.W.2d 328, 329 (1976). A decision regarding the credibility of witnesses rests within the discretion of the Commissioner, and the testimony should not be reweighed on appeal. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn.Ct.App.1984).

■ The Commissioner balanced Vang's testimony against Richard Patton's testimony, which included both hearsay and non-hearsay, and found the employer more credible. Regarding the steps A–1 took to protect Vang, Patton testified the supervisor told him he had placed the workers on different floors.

Patton also testified regarding his own conversation with Vang's counselor, stating he told the counselor to set up a meeting and call him back. Finally, he testified about Vang's missing aluminum cans, indi-

cating employees were not allowed to take anything out of the building where they were working. This testimony supports the Commissioner's findings A–1 took steps to separate the employees and to arrange a meeting with Vang's counselor. The conclusion Vang never spoke to his supervisor about the missing aluminum cans is also supported by the above testimony.

■ 4. Vang claims when a Commissioner's representative relies upon hearsay testimony, a finding must be made the witness uttering the hearsay is more credible than another witness. However, an actual determination regarding credibility is necessarily implicit in the Commissioner's decision. We cannot see the purpose which would be served by remanding this matter to the Commissioner for a specific finding regarding the credibility. *Cf. Lewis v. Minneapolis Moline, Inc.,* 288 Minn. 432, 436, 181 N.W.2d 701, 704 (1970).

5. An individual is disqualified from receiving unemployment compensation benefits if he voluntarily discontinued his employment without good cause. Minn.Stat. § 268.09, subd. 1(1) (1984). Once it has been established an employee has voluntarily quit, the employee bears the burden of proving he left with good cause attributable to his employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.,* 272 N.W.2d 262, 263 (Minn.1978). An employee should demonstrate his reason for quitting was "compelling, real and not imaginary, substantial and not trifling, reasonable and not whimsical and capricious". *Kratochwill v. Los Primos,* 353 N.W.2d 205, 207 (Minn.Ct. App.1984).

■ We agree with the Commissioner's determination Vang did not terminate his employment with A–1 with good cause attributable to his employer. In *Larson v. Department of Economic Security,* 281 N.W.2d 667 (Minn.1979), an employee was harassed by co-workers, who taunted and spat upon him nightly. When he informed his manager of the spitting, the manager promised to talk to the employee's co-workers, and requested the employee notify him if the harassment continued. When the

harassment did not stop, the employee quit without speaking again to the manager. Our supreme court said:

> Under the circumstances presented, once relator was provided with the expectation of assistance from his employer in eliminating his alleged fear of harm from a coworker, the burden was upon him to fully apprise the employer of the continuing facts giving rise to that fear. Without this full knowledge, it was reasonable for the employer to assume that the problem had been corrected.

> We therefore conclude that the evidence sustains the finding of the commissioner that relator had a duty to inform the employer of those allegations to allow the employer the opportunity to correct the situation and that, in the absence of this information, the employer should not be charged with having caused relator's unemployment.

*Id.* at 669. Here, where Vang's supervisor promised him the co-worker would be moved to another floor, and where Patton agreed to meet with Vang's counselor at his convenience, the employer could reasonably assume Vang's problem was being corrected since Vang made no further complaints.

### DECISION

The Commissioner's representative properly determined the employee voluntarily terminated his employment without good cause attributable to his employer.

Affirmed.