**Lyle D. PORTZ, Relator,**

v.

**PIPESTONE SKELGAS, Respondent,**

**Commissioner of Jobs & Training, Respondent.**

**No. C4–86–1066.**

Court of Appeals of Minnesota.

Dec. 9, 1986.

J. Kenneth Myers, Marshall, for Lyle D. Portz.

Pipestone Skelgas, pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs & Training.

Considered and decided by CRIPPEN, P.J., and LANSING, and LESLIE, JJ., with oral argument waived.

### OPINION

LANSING, Judge.

Lyle Portz appeals a determination that he did not have good cause to quit his job with Pipestone Skelgas. We affirm.

## FACTS

Pipestone Skelgas ("Pipestone") hired Lyle Portz in March 1976 to distribute and service Pipestone's products. Portz voluntarily quit that job in November 1985 and applied for unemployment compensation benefits, claiming that he resigned due to severe job stress because of the following problems:

(1) Charles Wallerich, Portz's immediate supervisor, assigned Portz' co-worker easy tasks and required Portz to do difficult work, such as ditch digging and carrying a water heater into a basement by himself;

(2) Wallerich invited the co-worker, but not Portz, to lunch;

(3) Wallerich and the co-worker received all of the overtime work. Portz once worked nine and one-half hours, but was required to take "comp" time instead of overtime;

(4) Portz did not receive a bulk gas discount given to other employees; and

(5) Portz did not receive his paychecks on time.

In response to Portz' allegations, Wallerich and an assistant area manager offered the following testimony:

(1) Portz had not requested help with the work which he now says was difficult;

(2) Portz refused to accept overtime work; Wallerich would have assigned Portz the work if he had requested it;

(3) Employees did not receive "discounts" on bulk gas, although they were allowed a special price. No testimony was offered to prove whether or not Portz received the employee price;

(4) Portz' paycheck was once late because he was on vacation and did not request that Wallerich mail it to his home. No testimony was offered to counter Portz' claim that Wallerich deliberately delayed distributing his check on other occasions.

After considering the evidence presented by both parties, a department referee determined that Portz voluntarily quit his job for good cause attributable to the employer and was entitled to receive unemployment compensation benefits. Pipestone appealed, and a Commissioner's representative reversed, finding that Portz' personal dissatisfaction with the conditions of his employment did not constitute good cause to quit. The representative reasoned that the evidence did not show sufficient actions by the employer to cause a reasonable employee to quit.

Portz appeals, claiming that the representative's decision is contrary to the evidence and the law. Portz also alleges that the representative improperly allowed Pipestone to introduce new evidence during oral arguments which he did not have an opportunity to rebut.

## ISSUES

1. Does the record support the Commissioner's determination that Portz did not resign for good cause attributable to Pipestone?

2. Did the Commissioner's representative erroneously consider new evidence which was not presented to the referee?

## ANALYSIS

### I

■ An employee who voluntarily resigns from his job is not entitled to receive unemployment compensation benefits unless the resignation was for "good cause attributable to the employer." In general, good cause to quit has been defined as follows:

> [T]he circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman * * *.

*Ferguson v. Department of Employment Services,* 311 Minn. 34, 44, 247 N.W.2d 895, 900 n. 5 (1976).

■ The phrase "good cause attributable to the employer" does not encompass situations where an employee experiences irreconcilable differences with others at work or where the employee is simply frustrated or dissatisfied with his working conditions. *Bongiovanni v. Vanlor Investments*, 370 N.W.2d 697 (Minn.Ct.App.1985); *Foy v. J.E.K. Industries*, 352 N.W.2d 123 (Minn. Ct.App.1984). *Cf. Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662 (Minn.Ct.App.1985) (an unworkable relationship with an immediate supervisor, plus an increase in responsibilities with no corresponding increase in salary, constituted good cause to quit).

■ The representative's conclusion on the issue of good cause is supported by the record.[1] At the hearing Pipestone offered substantial testimony to counter Portz' allegations of harassment and discriminatory treatment. The Commissioner's representative apparently believed Pipestone's version of the situation, and we must be guided by the Commissioner's determinations on credibility. *See Cary v. Custom Coach, Inc.*, 349 N.W.2d 331, 332 (Minn.Ct.App. 1984).

### II

■ Minn.Stat. § 268.10, subd. 5 (1984), provides for review of a referee's decision by the Commissioner's representative:

> Upon review, the commissioner or authorized representative may affirm, modify, or set aside any finding of fact or decision, or both, of the referee *on the basis of the evidence previously submitted in the case, or remand the matter back to the referee* for the taking of additional evidence and new findings and decision based on all of the evidence before the referee.

(Emphasis supplied). This language precludes the Commissioner from hearing new evidence on appeal. *See Heisler v. B. Dalton Bookseller*, 368 N.W.2d 314, 316 (Minn. Ct.App.1985).

Portz alleges that the Commissioner's representative erroneously considered evidence which was not presented to the referee. There is no record of the proceedings before the representative, and we are unable to ascertain whether Portz' allegations are, in fact, true.[2] Nonetheless, we do not believe a remand is necessary. The representative's written findings and conclusions refer to record evidence only, and we base our decision on that same evidence. Any additional evidence which might have been improperly submitted does not affect our determination that Portz did not have good cause to resign from Pipestone.

### DECISION

Unsatisfactory working conditions and a poor relationship with a supervisor did not give Portz good cause to quit. Remand is unnecessary, because any new evidence which the Commissioner might have improperly received was not prejudicial.

Affirmed.

---

1. *Cf. Wonder Industries, Inc. v. Marohn*, 345 N.W.2d 272 (Minn.Ct.App.1984) (difficulty cashing paychecks constituted good cause to quit); *Helmin v. Griswold Ribbon and Typewriter*, 345 N.W.2d 257, 260–61 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. June 12, 1984) (employer's failure to notify employee of insurance cancellation constituted good cause to quit). Clearly,

the *Marohn* and *Helmin* employees were presented with more compelling reasons to quit their employment.

2. A record of the parties' arguments on appeal to the Commissioner's representative is not mandated by statute.