**ARNOLDS SUPPLY & KLEENIT COMPANY, INC., Relator,**

v.

**Dia VANG, Commissioner of Jobs and Training, Respondents.**

No. CX–87–269.

Court of Appeals of Minnesota.

Aug. 4, 1987.

Nancy B. Vollertsen, Peggy Sue Juergens, Rochester, for Arnolds Supply & Kleenit Co., Inc.

Daniel L. Ruffalo, Rochester, for Dia Vang.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, St. Paul, for Com'r of Jobs and Training.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Arnolds Supply requests review of a determination that its employee, respondent Dia Vang, did not engage in misconduct for unemployment compensation purposes. We affirm.

## FACTS

Dia Vang is a Hmong refugee who has lived in the United States for approximately six years, and who speaks and understands minimal English. Vang worked for the relator Arnolds Supply & Kleenit Company ("Arnolds") as a member of an evening janitorial crew. Vang was discharged from her job for engaging in sex with an Arnolds foreman during working hours on IBM premises.

Vang applied for unemployment compensation, and a hearing was held to determine her entitlement to benefits. Arnolds relied solely upon the testimony of its vice-president, who testified that on May 8, 1986, the

manager at IBM called him and stated that Vang was complaining about sexual advances from the foreman. The following day, Vang, using an interpreter, told the vice-president that on one evening during the previous April, the foreman had come into a men's restroom which she was cleaning, and had made sexual advances towards her. She refused, and the foreman left.

The vice-president testified that the foreman claimed that Vang had walked in on him in the men's room, and had started yelling at him. He insisted Vang was trying to get him fired because he had broken off a love affair he had for two years with her. The foreman informed the vice-president that he and Vang had engaged in sex on IBM premises several times.

The vice-president testified that Vang agreed that she and the foreman had engaged in sex on IBM premises, but only twice, and stated that she understood why she was being fired, as long as the foreman was fired too. According to the vice-president, Vang never informed him that she had not consented to the sexual activity. Vang testified through an interpreter that the foreman forced her to have sex with him one time at work, but she refused to have sex with him on two subsequent occasions when he confronted her on the work premises.

Following the hearing, the referee determined that Vang's actions constituted misconduct, and Vang appealed. A Commissioner's representative reversed, concluding that Vang had not consented to the activity and should not be disqualified from receiving unemployment compensation benefits. Arnolds has appealed.[1]

## ISSUES

1. Does the record support the Commissioner's decision that Vang did not engage in misconduct?

---

1. Vang's attorney chose not to appear at the oral arguments before this court, indicating in a letter that he had a scheduling conflict. He also stated:

  It appears to me that oral arguments in this matter are not crucial and that the issues involved are adequately addressed in the briefs. There is very little to be gained by Oral Argument in this case due to the limited scope of review * * *.
  This approach to oral argument is not recommended appellate practice.

2. Did the Commissioner's representative erroneously fail to remand for additional testimony?

## ANALYSIS

### I.

 Arnolds claims the Commissioner's representative improperly reversed the referee's determination regarding the credibility of the witnesses, citing *Trebelhorn v. Minneapolis Cable Systems, Inc.*, 380 N.W.2d 237 (Minn.Ct.App.1986):

> We have deepening reservations, caused by this case and others like it, about application of the rule of law requiring deference to the Commissioner's representative in cases where the representative rejects the referee's findings that are based on the credibility of testimony the referee heard.

*Id.* at 239. Nevertheless, we continue to follow the rule prohibiting us from reviewing the findings of the referee *de novo* and substituting our judgment for that of the Commissioner's representative. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). We must defer to the findings of the Commissioner's representative where there is evidence in the record reasonably tending to support them. *Id.*

The representative's determinations regarding credibility must be accorded deference, *Cary v. Custom Coach, Inc.*, 349 N.W.2d 331, 332 (Minn.Ct.App.1984), and here there is evidence in the record to support the Commissioner's credibility determination. Vang stated unequivocally that she had been coerced. Arnolds, on the other hand, did not present testimony by the foreman, but instead chose to rely upon the vice-president's testimony concerning what the foreman had told him. While hearsay is admissible in unemployment compensation proceedings, *Vang v. A–1 Maintenance Service*, 376 N.W.2d 479, 482 (Minn.Ct.App.1985), the Commissioner's representative may accord such testimony the weight it deserves.

### II.

Arnolds also claims that, due to gaps in the transcript, the Commissioner's representative should have remanded the matter back to the referee. We do not believe, however, that the transcript is so defective as to require remand. While some testimony was inaudible, perhaps due to problems with the translation process, the evidence which was transcribed is sufficient to support the Commissioner's conclusion that Vang did not engage in misconduct.

## DECISION

The record supports the Commissioner's determination that Vang did not voluntarily engage in the conduct which led to her separation from employment.

Affirmed.