# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMSC-019

Filing Date: February 22, 2018

Docket No. S-1-SC-35121

STATE OF NEW MEXICO,

 Plaintiff-Petitioner,

v.

STEFAN CHAKERIAN,

 Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Stan Whitaker, District Judge

Hector H. Balderas, Attorney General
Martha Anne Kelly, Assistant Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Petitioner

Dane Eric Hannum
Albuquerque, NM

for Respondent

## OPINION

**MAES, Justice.**

**{1}** New Mexico law provides a motorist arrested for driving while under the influence of intoxicating liquor (DWI) the right to an independent chemical test in addition to the test administered by the police. *See* NMSA 1978, § 66-8-109(B) (1993). In this case we address (1) whether the arresting officer denied Defendant Stefan Chakerian this right when the officer provided Defendant with a telephone and telephone directory, but took no additional steps to help Defendant arrange for the test; and (2) what role law enforcement officers have after an arrestee expresses a desire for an additional test under Section 66-8-109(B). The

1

Court of Appeals held that Section 66-8-109(B) requires law enforcement to "meaningfully cooperate" with an arrestee who desires to obtain an additional chemical test, and reversed Defendant's DWI conviction. *State v. Chakerian*, 2015-NMCA-052, ¶ 19, 348 P.3d 1027.

**{2}** We hold that Section 66-8-109(B) requires law enforcement to advise an arrestee of the arrestee's right to be given an opportunity to arrange for a qualified person of the arrestee's own choosing to perform a chemical test in addition to any test performed at the direction of the arresting officer. This section does not, however, confer any additional obligation on law enforcement to facilitate the arrestee in actually arranging for the test. Accordingly, we reverse the Court of Appeals and affirm the metropolitan court convictions of DWI and speeding. Because the convictions are affirmed, we do not address the issue of what the sanction should be when the State denies a driver the statutory right to an independent test. We remand to the metropolitan court for further proceedings in accordance with this opinion.

## I.    FACTS AND PROCEDURAL HISTORY

**{3}** Albuquerque Police Officer Mark Aragon pulled over Defendant Stefan Chakerian around 2 a.m. for speeding on Central Avenue in Albuquerque. Officer Aragon approached Defendant and, after he smelled alcohol on Defendant's breath, began a DWI investigation. After the investigation, Officer Aragon arrested Defendant for DWI and took him to the Southeast Albuquerque Police Department (APD) substation in order to conduct a breath alcohol test. Before beginning the breath test, Officer Aragon read the implied consent rule to Defendant, which included Defendant's right to an independent test performed by a person of Defendant's own choosing. At the substation, the Intoxilyzer 8000 machine malfunctioned after the first breath test, and the test could not be completed. Officer Aragon then drove Defendant to the downtown Prisoner Transport Center (PTC) to attempt another breath test. At the PTC, Officer Aragon was able to obtain two breath samples from Defendant, which indicated breath alcohol concentrations of .12 and .11, respectively. These breath alcohol concentrations were recorded onto a breath card.

**{4}** After completing the test, Officer Aragon drove Defendant to the Metropolitan Detention Center (MDC). At the MDC,[1] Defendant told Officer Aragon that he wanted an additional chemical test. Officer Aragon allowed Defendant access to a telephone, a phone directory, and a pen while they waited for a routine medical screening of Defendant. Officer Aragon testified that Defendant had access to a telephone and telephone directory for twenty to thirty minutes; Defendant testified that he had this access for approximately ten to fifteen minutes. When the time came for the medical screening, Defendant told Officer Aragon he was finished with the telephone and telephone directory.

---

[1]The Court of Appeals opinion states Defendant requested an additional test and was granted access to the telephone at the PTC. *Chakerian*, 2015-NMCA-052, ¶ 4. The record reflects Defendant's request took place at the MDC.

**{5}** Defendant moved to suppress the admission of the breath card at trial in the metropolitan court on the grounds that he was not afforded his right to an independent test pursuant to Section 66-8-109(B). The trial judge denied the motion but stated, "I just don't see, the way things happened, that he was really afforded an opportunity to have a blood test given to him." The judge admitted the breath card and found Defendant guilty of DWI and speeding.

**{6}** Defendant appealed to the district court. He argued that the trial judge found he was not afforded his right to a reasonable opportunity for an independent test and, therefore, the trial judge erred in admitting the breath card. The State argued that the trial judge made no finding that Defendant was not given a reasonable opportunity for an independent test and that the trial judge correctly denied Defendant's motion to suppress the breath card.

**{7}** The district court affirmed the DWI conviction on the grounds that Defendant failed to establish any prejudice regardless of whether he was given a reasonable opportunity to obtain an independent test or not, citing *State v. Gardner*, 1998-NMCA-160, ¶ 13, 126 N.M. 125, 967 P.2d 465 (explaining the burden is on a defendant to "show prejudice from the statutory violation[] before suppression of the test results or setting aside the conviction[] [is] required"). Defendant appealed to the Court of Appeals. In a divided decision, the majority concluded that the plain meaning of Section 66-8-109(B) "imposes a duty upon the State, a duty that requires law enforcement to meaningfully cooperate with an arrestee's express desire to arrange for an independent blood test. The level of meaningful cooperation required by law enforcement will depend upon the facts and circumstances in each particular case." *Chakerian*, 2015-NMCA-052, ¶ 19. The Court determined that Defendant was not afforded his right of a reasonable opportunity to arrange for an independent chemical test and reversed the district court's affirmation of the metropolitan court judgment. *Id.* ¶¶ 23, 33. The Court remanded the case to the trial court to determine the sanctions for the statutory violation. *Id.* ¶¶ 32-33.

**{8}** Dissenting from the majority, Judge Zamora argued that Section 66-8-109(B) does not require police to assist an arrestee in arranging and effectuating an independent test. "The way our statutory provision is currently written means being informed of this statutory right, being given a reasonable opportunity to arrange for the independent testing, and nothing more." *Chakerian*, 2015-NMCA-052, ¶ 44 (Zamora, J., dissenting).

**{9}** The State petitioned this Court to review the Court of Appeals opinion, arguing that the Court of Appeals erred by (1) interpreting Section 66-8-109(B)(1) to include an affirmative duty on law enforcement to provide a "meaningful opportunity" for a DWI suspect to procure an independent chemical test, and (2) allowing the State to be sanctioned for failing to provide this meaningful opportunity. We granted certiorari pursuant to Rule 12-502 NMRA.

## II.    STANDARD OF REVIEW

**{10}** In this case we must interpret the meaning of Section 66-8-109(B). Statutory interpretation is a matter of law and is reviewed de novo. *State v. Johnson*, 2001-NMSC-001, ¶ 5, 130 N.M. 6, 15 P.3d 1233. Our main goal when interpreting statutory language "is to give effect to the Legislature's intent." *State v. Almanzar*, 2014-NMSC-001, ¶ 14, 316 P.3d 183 (internal quotation marks and citation omitted). To discern the Legislature's intent, the Court "look[s] first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (alteration in original) (internal quotation marks and citation omitted). "When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Johnson*, 2001-NMSC-001, ¶ 6 (internal quotation marks and citation omitted).

## III. DISCUSSION

**{11}** The State argues that the plain language of Section 66-8-109(B) only requires law enforcement to advise the arrestee of the right to be given an "opportunity to arrange" for an independent test but does not require law enforcement to make the opportunity "meaningful." The State relies on the principle that when the language of a statute is clear and unambiguous, the judiciary must apply the statute as written and refrain from interpreting it to include any additional requirements that the statute does not already set forth. *See Almanzar*, 2014-NMSC-001, ¶ 14; *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 ("We will not read into a statute language which is not there, especially when it makes sense as it is written.").

**{12}** Defendant asks this Court to affirm the judgment of the Court of Appeals and its conclusions that the opportunity for an independent test described in Section 66-8-109(B) must be "meaningful" and the police must "meaningfully cooperate" with an arrestee's express desire to arrange for an independent chemical test. Defendant frames the right to an additional test as a matter of due process to challenge the reliability of the State's evidence.

**{13}** The Court of Appeals agreed with this view, concluding, "Section 66-8-109(B) affords fundamental fairness and at the same time, constitutional due process." *Chakerian*, 2015-NMCA-052, ¶ 18. Given this framing of the statutory right, the Court determined that law enforcement must do something more than just provide an arrestee the opportunity to arrange a test. "[T]he opportunity provided must be meaningful" and police must "meaningfully cooperate" with an arrestee's desire to obtain an additional test. *Id.* ¶¶ 19, 22. The Court held, "[d]oing nothing more than providing access to a [telephone directory] and telephone in the early morning hours fails to rise to the level of meaningful cooperation required by Section 66-8-109(B)." *Chakerian*, 2015-NMCA-052, ¶ 20.

### A. Section 66-8-109(B) does require law enforcement to cooperate with an arrestee to obtain an additional chemical test

**{14}** Any person who operates a motor vehicle in New Mexico consents to chemical

4

testing of the person's breath, blood, or both if the person is arrested on suspicion of DWI. *See* NMSA 1978, § 66-8-107(A) (1993). The choice of the initial test is "as determined by a law enforcement officer." *Id.*; *see also Fugere v. State Taxation & Revenue Dep't, Motor Vehicle Div.*, 1995-NMCA-040, ¶ 25, 120 N.M. 29, 897 P.2d 216. Section 66-8-109(B) provides a right to additional testing as follows:

> The person tested shall be advised by the law enforcement officer of the person's right to be given an opportunity to arrange for a physician, licensed professional or practical nurse or laboratory technician or technologist who is employed by a hospital or physician of [the person's] own choosing to perform a chemical test in addition to any test performed at the direction of a law enforcement officer.

The arresting law enforcement agency is required to pay for the additional test. *Id.* § 66-8-109(E). Notably absent from the statute is any language regarding the consequences for noncompliance.

**{15}** A majority of states have statutes similar to Section 66-8-109(B). *See, e.g.*, Arizona, Ariz. Rev. Stat. Ann. § 28-1388(C) (1999) ("The person tested shall be given a reasonable opportunity to arrange for any physician, registered nurse or other qualified person of the person's own choosing to administer a test or tests in addition to any administered at the direction of a law enforcement officer."); Oregon, Ore. Rev. Stat. § 813.150 (2017) ("[A] person shall be permitted upon request, at the person's own expense, reasonable opportunity to have any licensed physician and surgeon, licensed professional nurse or qualified technician, chemist or other qualified person of the person's own choosing administer a chemical test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood . . . ."); *see also* Florida, Fla. Stat. Ann. § 316.1932(3) (West 2006); Idaho, Idaho Code § 18-8002(4)(e) (2014); Illinois, 625 Ill. Comp. Stat. Ann. 5/11-501.2(a)(3) (West 2018); Nevada, Nev. Rev. Stat. § 484C.180(1) (2009); Texas, Tex. Transp. Code Ann. § 724.019(a) (West 1995); Utah, Utah Code Ann. § 41-6a-520(4)(a) (West 2017).

**{16}** Of the jurisdictions that have addressed the issue, the majority have concluded that police have no duty to assist the arrestee and no obligation to provide the arrestee transportation to obtain an independent chemical test. *See, e.g.*, *Schulz v. Comm'r of Pub. Safety*, 760 N.W.2d 331, 334 (Minn. Ct. App. 2009) ("Other than providing a telephone, an officer has no obligation to assist a driver to obtain an additional test."); *State v. Jasa*, 901 N.W.2d 315, 326 (Neb. 2017) (holding police "are under no duty [under Neb. Rev. Stat. § 60-6,199 (1993)] to assist in obtaining such testing beyond allowing telephone calls to secure the test" (internal quotation marks and citation omitted)); *Schroeder v. State, Dep't of Motor Vehicles and Pub. Safety*, 772 P.2d 1278, 1281 (Nev. 1989) (per curiam) ("The police must not hinder an individual's timely, reasonable attempts to obtain an independent examination, but they need not assist him."); *State v. Tompkins*, 795 N.W.2d 351, 355 (N.D. 2011) ("An arresting officer has no duty to assist the accused in obtaining an independent blood-alcohol

test [but] [i]f the accused makes a reasonable request for an independent test, however, law enforcement must not interfere to the extent a reasonable opportunity to obtain the test is denied." (internal citations omitted)); *see also State v. Hedges*, 154 P.3d 1074, 1078 (Idaho Ct. App. 2007); *State v. Sidmore*, 951 P.2d 558, 570 (Mont. 1997); *State v. McNichols*, 906 P.2d 329, 333 (Wash. 1995) (en banc); *but see, Unruh v. State*, 669 So. 2d 242, 243-44 (Fla. 1996) (holding "law enforcement must render reasonable assistance in helping a DUI arrestee obtain an independent blood test upon request"); *Commonwealth v. Long*, 118 S.W.3d 178, 183 (Ky. Ct. App. 2003) (holding that Kentucky's "[independent test] statute requires some minimal police allowance and assistance").

**{17}** The only New Mexico case that has addressed Section 66-8-109(B) follows the majority of jurisdictions' interpretation but does not provide an answer to the issue of the role of law enforcement. In *State v. Jones*, 1998-NMCA-076, ¶ 22, 24, 125 N.M. 556, 964 P.2d 117, the Court of Appeals held that Section 66-8-109(B) entitles arrestees to a reasonable opportunity to contact a person of their choosing to draw and analyze their blood. This includes the right to be given access to a telephone to contact the person of their choosing to perform the chemical test. *Jones*, 1998-NMCA-076, ¶ 25. The Court held "our statute does not guarantee the arrestee an additional test will be performed, but only that the arrestee will be given a reasonable opportunity to arrange for an additional test." *Id.* ¶ 24.

**{18}** The only explicit duties that Section 66-8-109 places on law enforcement following the arrest of a person on suspicion of DWI are (1) that the arresting officer advise the arrestee of his or her right to an opportunity to arrange for an additional test, *see* § 66-8-109(B), and (2) if the arrestee exercises this right, that the agency represented by the arresting officer pay the cost of the additional test, *see* § 66-8-109(E). Accordingly, based on the plain language of Section 66-8-109, law enforcement is required to provide a reasonable opportunity for an  arrestee to arrange for an additional chemical test by a qualified professional in addition to any test performed at the direction of law enforcement, and to pay for that test if the arrestee chooses to have it. We next address whether Defendant was afforded a reasonable opportunity in this case.

**B.      Officer Aragon did not deny Defendant a reasonable opportunity to contact a person of his choosing for a chemical test**

**{19}** Defendant expressed a desire for an additional test; Officer Aragon provided Defendant with access to a telephone and a telephone directory for approximately fifteen to twenty minutes. On cross-examination, when Officer Aragon was asked whether he saw Defendant make any calls, he testified that

> [Defendant] didn't make a call. He wrote some numbers down. He wrote some numbers down out of the phone book. I didn't ask him what the phone numbers were or what they're—I saw him write down some numbers.

**{20}** Officer Aragon further testified that when asked, Defendant said he was "finished."

And when Defendant was asked why he did not press the matter of obtaining the second test, he said that he believed it was already too late. Defendant stated, "So much time had elapsed I didn't think it would matter." Defendant also testified, "The officer was not being very helpful in this regard. It was basically . . . 'You have the right to do this, and that's all I'm going to tell you.'" Defendant testified that he wanted a second test but didn't know where to look in the directory and there were no listings under "phlebotomists."

**{21}** This indicates Defendant was generally aware of his right to an additional test and understood that he could arrange for a chemical test from a person of his choosing. The statute provides only that a qualified person may perform the chemical test. It does not limit the arrestee's ability to contact someone other than the person who will actually perform the test, such as a friend or family member, to ask for help making arrangements for the test.

**{22}** Officer Aragon gave Defendant approximately fifteen minutes with a phone and phone book to seek an additional test. During the fifteen minutes, Defendant chose not to make any phone calls. Officer Aragon did not obstruct the Defendant from calling anyone. Based on the totality of the circumstances, Officer Aragon's actions here were sufficient to afford Defendant a reasonable opportunity to obtain an independent chemical test. We hold that the Court of Appeals erred in interpreting Section 66-8-109(B) to impose a duty upon law enforcement to "meaningfully cooperate" with a DWI suspect to procure an independent chemical test. At a minimum, the arrestee must be provided with the means to contact a person of the arrestee's choosing in order to arrange for a chemical test. Accordingly, we hold that the State did not deny Defendant his statutory right of a reasonable opportunity to arrange for an independent chemical test by a person of Defendant's own choosing.

**{23}** Because we conclude that law enforcement officers are not required to go beyond the explicit mandates of Section 66-8-109(B) and Defendant was not denied his statutory right, we need not address the second issue raised by the State concerning whether the Court of Appeals erred in interpreting Section 66-8-109(B) to allow the State to be sanctioned for failing to provide a meaningful opportunity.

## IV.    CONCLUSION

**{24}** We reverse the Court of Appeals and conclude that Defendant was afforded his statutory right to an opportunity to arrange for an independent chemical test. Section 66-8-109(B) imposes the duty on law enforcement to advise an arrestee of the right to an additional test and to provide the arrestee the means to arrange for a qualified person to conduct a chemical test. Police may not unnecessarily hinder or interfere with an arrestee's attempt to exercise the right to an additional test. Accordingly, we affirm Defendant's convictions and remand for further proceedings in accordance with this opinion.

**{25}    IT IS SO ORDERED.**

_____

                                        **PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**


_____
**BARBARA J. VIGIL, Justice**